IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **HIRING AUTOMATION, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:18-CV-773- KOB |
| ) | |
| **SIMPLE ONBOARD, LLC; NEON** ) | |
| **WORKFORCE TECHNOLOGIES, INC.;** ) | |
| **SYNERGI HOLDINGS, INC. F/K/A** ) | |
| **SYNERGI PARTNERS, INC.; AND** ) | |
| **SHANNON SCOTT,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Synergi Holdings, Inc.'s Motion to Dismiss. (Doc. 15). Plaintiff Hiring Automation, LLC, filed this case against Synergi, Simple Onboard, LLC, Neon Workforce Technologies, Inc., and Shannon Scott in this court on May 21, 2018, (doc. 1), and amended its complaint on August 14, (doc. 13). Synergi then filed a motion to dismiss Counts II, III, and V of Hiring Automation's amended complaint as those counts relate to Synergi. (Doc. 15). For the reasons below, the court WILL GRANT Synergi's motion to dismiss Count III and DENY Synergi's motion to dismiss Counts II and V.

**I. Factual Background**

Plaintiff Hiring Automation alleges that it agreed to sell its software known as "Click Onboard" to Defendant Simple Onboard in 2015. As part of this Software Acquisition Agreement, Simple Onboard allegedly agreed to pay Hiring Automation a sum certain, an ongoing royalty fee, and a portion of the sales price in the event a third party purchased either Click Onboard or Simple Onboard. Plaintiff also alleges that Defendant Neon Workforce agreed

to guarantee Simple Onboard's obligations under the Software Acquisition Agreement, though Hiring Automation does not provide any additional details about the relationship between Simple Onboard and Neon Workforce.

Hiring Automation alleges that Simple Onboard breached the Software Acquisition Agreement and owes Hiring Automation money. Hiring Automation alleges that Neon Workforce also owes it money as Simple Onboard's guarantor under the Software Acquisition Agreement.

Subsequent to the formation and alleged breach of the Software Acquisition Agreement, Defendant Synergi purchased all of Neon Workforce's stock in exchange for notes payable to Neon Workforce's three shareholders, one of whom was Defendant Shannon Scott. (Docs. 12 at ¶ 14; 15-1 at 11). So Synergi now fully owns Neon Workforce and still owes Mr. Scott under the terms of the Stock Purchase Agreement. (Doc. 15-1 at 12–13).

The Stock Purchase Agreement between Synergi and Neon Workforce's former shareholders includes a standard indemnification clause, under which the selling shareholders must indemnify Synergi for any losses it incurs as a result of undisclosed Neon Workforce liabilities. (Doc. 15-1 at 19, 44). The Stock Purchase Agreement also provides that neither "Neon nor any of its Subsidiaries is a guarantor or otherwise is liable for any Liability (including indebtedness) of any other Person." (*Id.*, at 33).

Hiring Automation's amended complaint does not allege any wrongdoing against Synergi. But Hiring Automation alleges that by owning Neon Workforce, which guaranteed Simple Onboard's payments under the Software Acquisition Agreement, Synergi is a proper defendant in this case as to Counts II, III, and V.

Count II of Hiring Automation's amended complaint requests an accounting of Simple Onboard and Neon Workforce's financial records. It also includes Synergi to the extent that "Synergi has either merged its operations with Neon, has absorbed Neon's accounting function or otherwise has the accounting records of Neon."

Count III of the amended complaint alleges that the indemnification clause in the Stock Purchase Agreement between Synergi and Mr. Scott created an express trust, with Synergi as trustee and any undisclosed Neon Workforce creditor as a beneficiary. As an alleged creditor of Neon Workforce, Hiring Automation brings this claim as beneficiary against Synergi to enforce its rights under the alleged express trust.

As an alternative claim, Count V of Hiring Automation's amended complaint requests this court to impose a constructive trust on the funds Neon Workforce allegedly owes Hiring Automation, which Synergi now controls.

This court found as moot Synergi's original motion to dismiss after Hiring Automation amended its original complaint. (Doc. 14). In a largely similar motion to dismiss the amended complaint, Synergi now moves the court to dismiss it from all three claims, arguing that Hiring Automation's amended complaint does not state a cause of action against it. Synergi also argues that Hiring Automation has not pled facts sufficient to pierce Neon Workforce's corporate veil and hold Synergi liable for Neon Workforce's debt as its shareholder.

Hiring Automation simultaneously filed its amended complaint and response to Synergi's motion to dismiss the original complaint. (Docs. 12–13). But Hiring Automation did not timely file, and indeed never filed, any response to Synergi's motion to dismiss the *amended* complaint.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## III. Discussion

Hiring Automation has not alleged that Synergi engaged in any wrongful or tortious conduct. In fact, Hiring Automation's amended complaint alleges that Mr. Scott actively concealed Neon Workforce's obligation under the Software Acquisition Agreement from Synergi. (Doc. 12 at ¶ 16). Instead, Hiring Automation seeks to keep Synergi as a defendant in this lawsuit as the trustee of an express trust or to impose a constructive trust as to funds Synergi currently controls as an innocent recipient of Neon Workforce's and Mr. Scott's wrongdoing. Pursuant to either an express or a constructive trust, Hiring Automation also requests an

accounting of the funds Synergi holds as a result of the wrongdoing. Because Hiring Automation's request for an accounting relies on it first establishing either an express or constructive trust, this Memorandum Opinion addresses Hiring Automation's two trust theories first and then addresses its request for an accounting.

*Count III—Express Trust*

Count III of Hiring Automation's amended complaint alleges that Synergi and Neon Workforce's Stock Purchase Agreement created an express trust made "not only for the benefit of Synergi, but also for the direct benefit of creditors of Neon." (Doc. 12 at ¶ 36). But Synergi included the Stock Purchase Agreement with its motion to dismiss and argues that the agreement creates no such trust. (Doc. 15 at 3–4; Doc. 15-1).[1]

Under Alabama law, a trust cannot be created without trust property, "and [] an interest which has not come into existence or an expectation or hope of receiving property in the future cannot be held in trust." *In re Lucas*, 477 B.R. 236, 244 (Bankr. M.D. Ala. 2012) (citing C.P. Jhong, Annotation, *Creation of Express Trust in Property to be Acquired in Future*, 3 A.L.R.3d 1416, at § 3 (1965)).

Here, the indemnity agreement in the Stock Purchase Agreement does not create an express trust. The Stock Purchase Agreement provides that Neon Workforce's selling shareholders must indemnify any loss Synergi incurs as a result of any undisclosed Neon Workforce liability. (Doc. 15-1 at 43–44). Synergi executed a note for future payments to the sellers, so the agreement permits Synergi to satisfy the sellers' hypothetical indemnification obligations via setoffs against amounts otherwise due to the sellers under the note. (*Id.* at 46).

---

[1] The court can consider the Stock Purchase Agreement without converting Synergi's motion to dismiss into a motion for summary judgment because the Stock Purchase Agreement is integral to plaintiff's express trust claim and because Hiring Automation's complaint referenced the Stock Purchase Agreement in its complaint. *See* Fed. R. Civ. P. 10(c); *Lary v. Doctors Answer, LLC*, No. CV-12-S-3510-NE, 2013 WL 987879, at *2 n. 10 (N.D. Ala. Mar. 8, 2013); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997).

But this indemnity arrangement does not establish an express trust because hypothetical indemnification payments do not constitute valid trust property. *See In re Lucas*, 477 B.R. at 244 (concluding hypothetical judgment amounts are "not actual, particular funds" required to establish an express trust).

Instead, the indemnification clause provides recourse against Neon Workforce's selling shareholders *if* Synergi incurs losses for undisclosed Neon Workforce liabilities. (Doc. 15-1 at 43–44). Even if Hiring Automation ultimately prevails on its claims against Neon Workforce and the indemnification provision permits Synergi, as Neon Workforce's shareholder, to withhold from the sellers funds otherwise due under the contract, Hiring Automation's "expectation or hope" of receiving that property in the future does not constitute valid trust property. So this court WILL GRANT Synergi's motion to dismiss Count III of Hiring Automation's amended complaint alleging Synergi and Neon Workforce's shareholders created an express trust for the benefit of Neon Workforce's creditors.

*Count V—Constructive Trust*

Count V of Hiring Automation's amended complaint requests that this court establish a constructive trust comprised of funds Synergi currently holds but that Hiring Automation alleges rightfully belong to it. Courts can impose a constructive trust when "the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealment, . . . or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest." *Knowles v. Canant*, 255 Ala. 331, 333 (1951).

Imposing a constructive trust is an equitable remedy, not a cause of action in and of itself. *Gulf States Steel, Inc. v. Lipton*, 765 F. Supp. 696, 704 (N.D. Ala. 1990) (noting that as opposed to a cause of action "the case law indicates unanimously that a constructive trust is a remedy

imposed to prevent the enjoyment of fraud or of a breach of a fiduciary duty"). Synergi argues that Hiring Automation cannot request a constructive trust of Synergi's funds because (1) Hiring Automation does not have an alternative cause of action against Synergi, and (2) Hiring Automation has not otherwise accused Synergi of any other wrongdoing. (Doc. 15 at 4–5).

But this court has not found any binding authority standing for the proposition that Alabama law permits imposing a constructive trust *only* when the plaintiff has pled a valid alternative cause of action against the party in control of the property at issue. In *Radenhausen v. Doss*, the Alabama Supreme Court considered whether the trial court properly dismissed plaintiffs' request for a constructive trust after it had dismissed all other claims against the defendants. 819 So. 2d 616, 620 (Ala. 2001). The Court held that the plaintiffs could request the court to impose a constructive trust, despite pleading no other cause of action, because they pled "traditional bases" sufficient for Alabama courts to impose a constructive trust, such as undue influence and abuse of a confidential relationship. *Id.*, at 622. That is, while courts must have a basis to impose a constructive trust, the basis does not need to be an independent cause of action in the case. Further, the plaintiffs in *Radenhausen* did not allege wrongdoing against the defendants but rather against the *former* trustee, who by then had died and was not a party in the lawsuit. *Id.*, at 618, 620–21. The Court still held that this wrongdoing, despite being committed by a nonparty, was sufficient to support plaintiffs' standalone request to impose a constructive trust. *Id.*, at 621–22.

Here, Synergi argues that the court should dismiss Hiring Automation's request for a constructive trust because plaintiff has not alleged any wrongdoing against Synergi but rather against Neon Workforce, Simple Onboard, and Mr. Scott. (Doc. 15 at 4–5). But the plaintiffs in *Radenhausen* had not alleged any wrongdoing against the defendants in that case either—the

former trustee committed all the alleged wrongdoing. 819 So. 2d at 621–22. Yet the court in *Radenhausen* still permitted the plaintiffs to request a constructive trust against the innocent recipient defendants. *Id.*, at 622. Similarly, Hiring Automation has not alleged any wrongdoing against Synergi, but Hiring Automation has alleged that Synergi now controls funds as an innocent recipient of Neon Workforce's and Mr. Scott's wrongdoing.

Following *Radenhausen*, this court concludes that Hiring Automation has pled facts sufficient to request a constructive trust as to funds Synergi now holds as an innocent recipient and WILL DENY Synergi's motion to dismiss Count V of Hiring Automation's complaint requesting this court to impose such a constructive trust.

*Count II—Action for Accounting*

Count II of Hiring Automation's amended complaint requests that all defendants "provide an accounting to the Plaintiff of the quarterly financial records of Simple and all sales made by Simple and/or Neon relating to or arising out of the sale of the software or the sale of the assets of those Defendants' businesses." (Doc. 12 at 7). Hiring Automation includes Synergi in this count upon the "information and belief [that] Synergi has either merged its operations with Neon, has absorbed Neon's accounting function or otherwise has the accounting records of Neon."

A plaintiff cannot request an accounting without otherwise alleging facts sufficient to show that it deserves an accounting. *See Hanuman, LLC v. Summit Hotel OP, LP*, No. 2:13-CV-2234-HNJ, 2017 WL 4508158, at *6 (N.D. Ala. Oct. 2, 2017). And the accounting must be incidental to other relief. *Radenhausen*, 819 So. 2d 616, 619 n. 1 (Ala. 2001); *Boyett's, Inc. v. Gross*, 163 So. 2d 610, 617 (Ala. 1964); *Opry South Land Inv. Grp, Ltd v. Price*, 679 So. 2d 1083, 1086 (Ala. Civ. App. 1996). But once a plaintiff establishes a viable claim for relief

against a defendant, the trial court has broad discretion to order an accounting as to that defendant. *Givens v. Saxon Mortg. Services, Inc.*, No. 13-00245-KD-N, 2014 WL 2452891, at *17 (S.D. Ala. 2014); *Ex parte Deaton*, 8 So. 2d 819 (1942); *Opry South Land Inv. Grp., Ltd.*, 679 So. 2d at 1086.

Synergi's motion to dismiss argues that this court should dismiss it from Hiring Automation's request for an accounting because the complaint does not otherwise establish any claim for relief against it. (Doc. 15 at 4–5). But this court concluded above that Hiring Automation's complaint sufficiently pled facts to request the imposition of a constructive trust as to funds Synergi currently controls. Having concluded that Hiring Automation sufficiently pled facts to request a constructive trust, the court concludes that Hiring Automation can also request an accounting incidental to that relief. Synergi's motion does not make any alternative arguments for dismissing Hiring Automation's accounting request, and the court declines to make any for it. So the court WILL DENY Synergi's motion to dismiss Count II of Hiring Automation's amended complaint requesting an accounting.

*Piercing the Corporate Veil*

Anticipating Hiring Automation's potential response, Synergi also argues that Hiring Automation has not alleged facts sufficient to justify piercing the corporate veil. (Doc. 15 at 6–10). But this court's conclusion regarding Counts II and V of Hiring Automation's amended complaint renders Synergi's argument moot, and whether Hiring Automation can pierce Synergi's corporate veil does not impact this court's analysis of Count III. Moreover, Hiring Automation has not indicated that it seeks to pierce the corporate veil. So this court declines to consider Synergi's argument on this point.

**IV. Conclusion**

For the reasons discussed above, the court WILL GRANT Synergi's motion to dismiss Count III of Hiring Automation's amended complaint alleging an express trust and the court WILL DENY Synergi's motion to dismiss Counts II and V of Hiring Automation's amended complaint requesting an accounting and a constructive trust, respectively.

**DONE** and **ORDERED** this 30th day of January, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE